# AFFIDAVIT IN SUPPORT OF APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH

I, Andrew Floriani, being duly sworn, depose and state as follows:

### Affiant Background and Purpose of Application

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of two cellular phones seized on March 5, 2026, described below and in Attachment A that are currently in law enforcement's possession and the seizure from those devices of the electronically stored information described in Attachment B.

2. The items to be searched are the following: a white iPhone seized from Gilmarques Alves SILVA-DE OLIVEIRA, the passenger of a vehicle encountered by U.S. Border Patrol on March 5, 2026, and a white iPhone seized from Eduarda Kamylle GONCLAVES, the driver of a vehicle encountered by U.S. Border Patrol on March 5, 2026 [hereinafter "Devices"]. The Devices are currently located in the evidence safe at the U.S. Border Patrol Newport Station, 373 Citizens Road, Derby, Vermont.

3. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence human smuggling activities by the users of the Devices, specifically violations of Title 8, United States Code, Sections 1324.

4. I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security, Office of Border Patrol. I have been employed as a BPA since June 2005. I am currently assigned as a Prosecution Agent, and I work at the Newport Border Patrol Station in Derby, Vermont (VT). I received formal training to identify and investigate alien smuggling and

narcotics smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico, from June 2005 to November 2005, and through regular and recurring on-the-job training and annual ACADIS course certification. In my experience investigating many alien smuggling and narcotics smuggling cases, electronic devices were commonly used to facilitate the smuggling event by arranging the coordination of transportation and by guiding both the smugglers transporting the individuals and the receiving load driver via global positioning system applications and verbal and/or non-verbal communications relayed over Wi-Fi and/or a telecommunications network.

5. Based on my training and experience, I am aware that individuals working together to commit crimes often use their cellular phones to contact one another, to research related topics, to navigate while driving, and to coordinate meeting locations. These tasks are frequently necessary in the Swanton Sector Area of Responsibility (AOR); given the remote and rural nature of the AOR, arranging meetings at precise times and navigating to locations unlikely to appear on printed maps often requires the use of cellular devices. Further, I am aware that cellular phones and the cellular network often generate and record data without the phone users necessarily being aware of or able to delete the data.

6. The information contained within this affidavit is based upon my training and experience, upon my own investigative efforts, and upon investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. It is meant to set forth probable cause to believe that the violations occurred, and it does not include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following

paragraphs are related in sum and substance and are not meant as direct quotations or complete descriptions.

## Probable Cause

7. At approximately 7:50 a.m. on March 5, 2026, agents from the Newport, Vermont U.S. Border Patrol Station received information via radio from Swanton Sector Radio Communications ("dispatch") that two individuals wearing tan jackets and carrying luggage were crossing the international border from Canada into the United States in the area of the bike path on North Derby Road in Derby, Vermont. Agents immediately responded to the area. Agent Floriani drove north on North Derby Road to observe southbound vehicles and their drivers in case the two individuals had already been picked up. As he was driving, Agent Floriani observed a grey Honda bearing Massachusetts registration driving south with a female driver (later identified as Eduarda Kamylle GONCLAVES) wearing a red shirt, and a male passenger (later identified as Gilmarques Alves SILVA-DE OLIVEIRA). Suspecting, based on his training and experience, that the out-of-state vehicle could be involved in the border-crossing event, Agent Floriani immediately turned his marked Border Patrol vehicle equipped with lights and sirens around to attempt to make a vehicle stop. However, he soon lost sight of the vehicle despite increasing his speed due to the road curves and mountainous terrain. Agent Floriani came to a straightaway where the vehicle was no longer visible at the intersection of North Derby Road. and Darling Hill Road. Agent Floriani believed that the vehicle was avoiding detection and had driven down a side street or driveway. Agent Floriani ultimately turned down the first side road, Whispering Pines Road, in search of the Honda.

8. Agent Floriani saw the vehicle pulled into the driveway of a residence on Whispering Pines Road. He confirmed that it was the vehicle he had seen previously and requested a vehicle registration check through dispatch on the Massachusetts license plate. While

he was communicating with dispatch, Agent Floriani saw three individuals running west behind the house toward the bike path and Lake Memphremagog. Agent Floriani began to pursue the individuals on foot through thick snow. The subjects started to run south and angled off in different directions. Agent Floriani observed one male subject on the bike path running south and two others running onto the frozen lake near the shoreline. Agent Floriani observed one male subject, later identified as Nahir Michael DE LA CRUZ Aguilar ("DE LA CRUZ"), attempting to hide under a tree. Agent Floriani identified himself as a Border Patrol Agent and told DE LA CRUZ to walk back up to the bike path, which he did. Agent Justin Speaks was in the same area and DE LA CRUZ was instructed to go with Agent Speaks, as two other subjects continued to run.

9. Agent Speaks also apprehended another subject, later identified as Wanderson Juninho FERREIRA ("FERREIRA"), approximately 100 yards south of where DE LA CRUZ had been found as FERREIRA was attempting to hide near a shed on Lindsay Beach. Agent Speaks identified himself as a Border Patrol Agent and conducted an immigration inspection. Neither DE LA CRUZ nor FERREIRA possessed any immigration documentation that would allow them to remain or stay in the U.S. legally. It was later discovered that DE LA CRUZ had a valid Spanish passport in his suitcase in the vehicle. Agent Floriani continued to follow additional subjects onto the frozen lake. SILVA-DE OLIVEIRA was one of the subjects who ran onto the frozen lake. SILVA-DE OLIVEIRA ran for a couple of miles toward the middle of the lake. Agent Spencer was able to apprehend SILVA-DE OLIVEIRA and conducted an immigration inspection. SILVA-DE OLIVEIRA did not have any immigration document and admitted that he was a citizen of Brazil. During this time Agent Boyd could see a phone in SILVA-DE OLIVEIRA's hand and took it from SILVA-DE OLIVEIRA. Approximately an hour later, Border Patrol Agents spotted GONCALVES-RODRIGUES peeking her head out of

an outhouse near a camp on White Birch Lane in Derby, VT. BPA Spencer observed GONCALVES-RODRIGUES close the door and lock it. BPA Spencer knocked on the door and identified himself as Border Patrol Agent and GONCALVES-RODRIGUES opened the door where she was detained. Agent Boyd saw that she was carrying a cell phone and car keys and instructed GONCALVES-RODRIGUES to hand over both items, which she did. Agent Spencer attempted to do an immigration inspection, but GONCALVES-RODRIGUES refused to answer questions.

10. At the Newport, VT Border Patrol Station processing area both GONCALVES-RODRIGUES and SILVA-DE OLIVEIRA had their Miranda rights read to them. Both subjects chose not to speak with Agents without an attorney present and did not consent to the search of their phones.

11. FERREIRA had his Miranda rights read to him and he was willing to answer questions without a lawyer present. The interview was recorded by BPA Intel Thomas Russell and Homeland Security Investigator (HSI) Trevor Walker. FERREIRA stated that he was born in Taratinga, Brazil. He claims that he entered Toronto, Canada four days prior alone. He stated that he entered Canada with a document that he obtained online but doesn't recall what the exact document was and then applied for asylum. After spending a few days in Toronto at a hotel, he took a bus to Montreal, Canada and it took about five to six hours. He then stated he paid for a hotel and there was another man with him in Montreal. He claims that the other man booked an Uber and drove from Montreal to the border. He claims that he walked across the border and that the other guy with him paid the Uber. He stated that the person in the Uber also exited the vehicle and he followed him crossing the border. The person with him spoke Spanish not Portuguese. He stated that there was another person that he was talking to on the phone while at

the hotel in Montreal. He initially claimed that he was using the hotel phone to speak with the other person. FERREIRA consented to allow Agents to search the two phones he had with him. FERREIRA showed Agents the number he was in contact with in Canada which was 52-998-765-4839. He stated that this was the person he was in contact with and his name is Daniel Tubarao. He gave FERREIRA the contact of the person that came with him in the Uber. He was to pay $1,500.00 within a year after arriving in the U.S. He claims they were going to give him payment instructions if he arrived in the U.S. He claims his destination was New York and he was going to stay with a friend

12. Based on my training and experience, I believe GONCALVES-RODRIGUES and SILVA-DE OLIVEIRA were in the area to pick up DE LA CRUZ and FERREIRA as they entered the United States illegally from Canada. Based on my training and experience, I am aware that individuals often are involved in more than one pick up event, meaning GONCALVES-RODRIGUES and SILVA-DE OLIVEIRA may have been involved in smuggling events before March 5, 2026. Based on my training and experience, I further believe the devices taken from GONCALVES-RODRIGUES and SILVA-DE OLIVEIRA will likely contain evidence related to the coordination of their arrival to pick up the two aliens.

### Conclusion and Request

13. Based on the foregoing, I submit there is probable cause to believe that on March 5, 2026, DE LA CRUZ and FERREIRA illegally entered the United States and that GONCALVES-RODRIGUES and SILVA-DE OLIVEIRA knowingly and intentionally transported DE LA CRUZ and FERREIRA once they entered the country. I further submit that the information contained in this affidavit establishes probable cause for the issuance of a search warrant authorizing the examination of the Devices for evidence of violations of 8 U.S.C. § 1324

pertaining to the March 5, 2026, event as further described in Attachments A, and the seizure therefrom of data described in Attachments B.

14. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this 13th day of March 2026.

*[signature]*
Andrew Floriani, Border Patrol Agent
U.S. Border Patrol, Department of Homeland Security

Subscribed and sworn to before me on March 13, 2026

*[signature]*
Hon. Kevin J. Doyle, Magistrate Judge
United States District Court
District of Vermont